UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

KATHY L. WILSON                                                                              PLAINTIFF

V.                              No. 2:21-CV-98-LPR-JTR

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration                                                               DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Lee P. Rudofsky. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Rudofsky can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

### I.   Introduction

On September 19, 2019, Kathy L. Wilson ("Wilson") filed a Title II application for a period of disability and disability insurance benefits. (Tr. at 11). In

the application, she alleged disability beginning on August 1, 2011.[1] *Id*. In a written decision dated December 23, 2020, an administrative law judge ("ALJ") denied the application. (Tr. at 20–21). The Appeals Council denied Wilson's request for review on May 21, 2021. (Tr. at 1–4). The ALJ's decision now stands as the final decision of the Commissioner, and Wilson has requested judicial review.

For the reasons stated below, the Court concludes that the Commissioner's decision should be affirmed.

## II. The ALJ's Decision

At step one of the required five-step analysis, the ALJ found that Wilson had not engaged in substantial gainful activity from August 1, 2011 through March 31, 2016.[2] (Tr. at 13). At Step Two, the ALJ determined that Wilson has the following severe impairments: (1) fibromyalgia; (2) diabetes; (3) bipolar disorder; and (4) anxiety. *Id*.

---

[1] Wilson acquired sufficient quarters of coverage to remain insured through March 31, 2016. (Tr. at 11). This means that the relevant time-period for determination of eligibility for benefits runs from the alleged onset date of August 1, 2011, through the date-last-insured of March 31, 2016.

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

At step three, the ALJ determined that Wilson's impairments did not meet or equal a listed impairment (Tr. at 14–16).

The ALJ determined that Wilson had the residual functional capacity ("RFC") to perform work at the light exertional level, with additional limitations; (1) she could not climb ropes, ladders, or scaffolds; (2) other postural activities could be performed no more than occasionally; (3) she must avoid temperature extremes; and (4) the work is limited to simple, repetitive tasks, with only occasional changes in the work setting. (Tr. at 16).

At Step Four, the ALJ found that Wilson was unable to perform any of her past relevant work. (Tr. at 19). At Step Five, the ALJ relied upon Vocational Expert ("VE") testimony to find that, based on Wilson's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform, including positions such as bench assembler, mail clerk, and office helper. (Tr. at 20–21). Thus, the ALJ concluded that Wilson was not disabled. *Id*.

### III.  Discussion

A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable

mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

  B.   Wilson's Arguments on Appeal

Wilson contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. She argues that the ALJ did not properly assess fibromyalgia, chronic fatigue, and neuropathy, and that the ALJ should have further developed the record. She also assets that the RFC for light work did not incorporate all of Wilson's credible limitations.

4

The Court first notes that the ALJ, as well as the Disability Determination Services ("DDS")[3] medical experts at the initial and reconsideration levels of review, had the difficult task of looking at medical evidence from a minimum of three years prior to the application date, due to Wilson's date-last-insured. As well, there were significant gaps in Wilson's treatment. So the ALJ had to piece together bits of evidence, some of it pretty remote in time.

Wilson did seek treatment for fibromyalgia, which the ALJ ruled was a severe impairment. (Tr. at 312, 464–465). Wilson said that steroid injections helped with fibromyalgia, and she asked for more injections around the holidays in 2016 because she was hosting family for Christmas. (Tr. at 45, 464–465). There is little mention of chronic pain and neuropathy in the medical record, and any reference is generally based on subjective complaints, or Wilson's own medical history. Wilson treated her pain with gabapentin, muscle relaxers, and injections; she did not require any form of aggressive treatment.[4] (Tr. at 35). Musculoskeletal and neurological examinations were grossly normal over the relevant time-period, as were lumbar and cervical spine x-rays. (Tr. at 16–18, 310–312, 332–336)

---

[3] Social Security Disability applications are initially processed through a network of local Social Security Administration field offices and State agencies (called Disability Determination Services or DDSs).

[4] The need for only conservative treatment contradicts allegations of disabling conditions. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993).

Moreover, Wilson said that she could do things like drive, do laundry, sweep, shop for groceries, and handle finances. (Tr. at 37–39). She traveled to Florida to see her daughter in 2015. (Tr. at 16–18). These activities do not suggest disabling pain from fibromyalgia, chronic pain, or neuropathy. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). Finally, no doctor placed restrictions on Wilson due to those conditions. A lack of physician-imposed restrictions may lend support to an ALJ's decision that a claimant is not disabled. *Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003).

Wilson is reminded that allegations of an impairment, and even medical diagnosis of a condition, are not sufficient to prove disability. There must be a significant functional loss based on the condition. See *Dunahoo v. Apfel*, 241 F.3d 1033, 1039–40 (8th Cir. 2001); *Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990). Wilson has not shown that to be the case.

Notably, Wilson is an insulin-dependent diabetic, but she makes no argument with respect to that condition in her brief, and as of August 2016, her doctor stated that she had "type-2 diabetes without complication." (Tr. at 467). Her doctors made diet recommendations to help Wilson manage her diabetes. (Tr. at 356–358). Her neuropathy was a result of diabetes, but there is little evidence of treatment for neuropathy, and Wilson's daily activities do not suggest that it was disabling.

Wilson also argued that the ALJ should have ordered a consultative examination, because the DDS medical experts found insufficient evidence to rate her impairments.[5] (Tr. at 55–57, 66–68). First, the DDS medical experts themselves said that no consultative examination was required. (Tr. at 55, 67). Second, the ALJ need not base her decision on any opinion, or any piece of evidence, in particular. See *Buford v. Colvin*, 824 F.3d 793 (8th Cir. 2016) (the ALJ properly developed the record and substantial evidence supported the RFC finding even though the record did not contain any treating or examining physicians' opinions). The ALJ must make her findings based upon the record as a whole, and there was no crucial undeveloped issue in this case. Also, a consultative examination tells what a claimant can do functionally, at that particular point in time, and an exam ordered 3 to 4 years after the end of the relevant time-period would have little evidentiary value.

Finally, while Wilson argues that the RFC for light exertional work exceeds her abilities, this argument fails.[6] Light work is the ability to lift no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to

---

[5] An ALJ does have a basic duty to develop a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994). However, it is well-settled that a claimant has the burden of proving her disability; the ALJ does not have to play counsel for the claimant. *Id*.; *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011).

[6] The ALJ bears the primary responsibility for assessing a claimant's "residual functional capacity"—that is, what he or she can still do, in spite of severe impairments. *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) (citations omitted). The ALJ is not required to include limitations in the RFC that are not supported by the evidence in the record. *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003).

ten pounds, a good deal of walking or standing, and involving some pushing and pulling of arm or leg controls when sitting most of the time. 20 CFR § 404.1567.

The mild medical findings and Wilson's positive response to conservative treatment suggest that light work would be possible. There is even more support for the RFC based on Wilson's ability to do things on a daily basis, which correspond to light exertional work.[7]

## IV. Conclusion

There is substantial evidence to support the Commissioner's decision that Wilson was not disabled. The ALJ properly assessed all of Wilson's medical conditions, the record was fully developed, and the RFC fully incorporated all of Wilson's credible limitations.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be AFFIRMED and that judgment be entered for the Defendant.

DATED this 20th day of September, 2022.

_____
UNITED STATES MAGISTRATE JUDGE

---

[7] The ALJ also properly accounted for mental impairments in the RFC. Wilson did not undertake specialized psychiatric treatment, and she had no inpatient hospitalizations. The restriction to simple work tasks factored in any mental limitations.